**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jonah Shacknai, et al., | ) | No. CV-08-01025-PHX-FJM |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| John Charles Mathieson, et al., | ) | |
| Defendants. | ) | |

Plaintiffs Jonah Shacknai and three trusts bring this action against defendants John Mathieson, Sherrie Sucher-Mathieson, and three Merrill Lynch entities asserting tort and contract claims arising out of the sale of life insurance. The court has before it defendants' unsealed and sealed motions for summary judgment (docs. 149 & 168), plaintiffs' response (doc. 180), and defendants' reply (doc. 181).

**I.**

In late 2003, Shacknai was in the market for a substantial amount of life insurance for estate planning purposes. His Merrill Lynch financial advisor introduced him to Mathieson, a life insurance specialist with Merrill Lynch Insurance Group. During a short initial meeting around December 5, 2003, Shacknai and Mathieson discussed using a premium financing arrangement to purchase life insurance. Premium financing is supposed to provide tax and liquidity advantages by using funds borrowed against potentially illiquid assets to front load

a large insurance policy. The objective is to accumulate a substantial cash value quickly in order for the returns on the cash value to be sufficient to pay the periodic insurance charges for the policy and interest payments on the loan. A second, much smaller, life insurance policy is sometimes used for withdrawals to pay interest on the loan during the early years while the cash value of the larger policy is building. When paired with a trust as the owner and beneficiary, a successful premium-financed life insurance policy can exist outside of the insured's estate without requiring substantial liquidity or exchanges potentially subject to gift taxes to fund it. On the death of the insured, the principal on the loan is repaid out of the death benefit, leaving the balance for an insured's children and/or to pay estate taxes. The success of premium financing depends, in part, on the difference between the interest rate on the loan, which is a factor of the short-term interest rate environment, and the crediting rate on the policy's cash value, which is determined by the insurer's return on longer-term investments. This is the kind of tax avoidance scheme that causes the public to be resentful of wealthy persons and their financial advisors.

During a second meeting on December 8, 2003, Shacknai and Mathieson spent about an hour going over premium financing using several generic illustrations from Institutional Marketing Consultants, Inc., a firm Mathieson collaborated with to structure such transactions. Defendants allege that they also reviewed an insurance illustration from Pacific Life. Drawing all reasonable inferences in favor of plaintiffs as non-movants, Mathieson described his product as bulletproof and self-sustaining with very little risk. According to Mathieson, it was low risk because long-term rates historically exceed short-term rates and they rarely invert because they float in the same market. Unsure of Mathieson's oral representations, Shacknai requested a personal letter disclosing the risks involved with premium financing.

The next day, Shacknai filled out an application and signed two standardized disclosure statements. The first was from Pacific Life as the potential insurer. It explained that structuring illustrations like the ones Shacknai considered contain non-guaranteed elements and need to be understood in conjunction with an insurance illustration. The second

was specific to structuring illustrations and stated, in part, that the time during which the cash value would be able to service the loan interest was not guaranteed and it depended on the actual interest rate charged each year and the crediting rate. It also disclosed that the rates were not guaranteed.

Shacknai moved forward with the transaction. In mid-December 2003, structuring illustrations specific to his requirements were generated, one of which he eventually signed. The final package took the form of two Pacific Life policies with face amounts of $40 million and $2.8 million, an initial $3.3 million loan from A.I. Credit Corp. ("AIC"), and security agreements to pledge the policies themselves and $2 million in securities from one of Shacknai's trusts as collateral for the loan. A new trust was created to own the policies and be obligated on the loan. The plan was to borrow close to $13.8 million more from AIC over the next six years to invest in the main policy. The policy contracts, the promissory note, and the security agreements were entered into in late January and early February 2004. They all included merger clauses. The annual crediting rate on the policies' cash values had a current rate of 6.70%, representing 4.00% as a guaranteed minimum with excess interest credited depending on market conditions. The annual interest rate on the note was 3.38% for the first year and the 1-year London Interbank Offered Rate plus 2.00% adjusted annually thereafter.

Around the same time, Shacknai apparently insisted on receiving the disclosure letter he had requested in December. Mathieson responded by sending Shacknai a letter dated February 5, 2004 which purported to explain the risks of premium financing. It disclosed that poor insurer performance could lead to additional financial outlay. It also arguably implied that the risk from an inversion of the short- and long-term rates was only the posting of additional collateral and not the possibility of additional financial outlay, and only if the inversion were to last over ten years. The trust acknowledged delivery of the policies in March 2004 and the transaction closed.

In 2007, the interest rate on the loan rose to 7.04% and the crediting rate on the policies fell to 5.60%. In January 2008, the trust was required to pay $572,136.71 to AIC for

1 interest not otherwise paid through withdrawals from the policies' cash values. It did not
2 make the payment and defaulted on the loan. In September 2008, AIC surrendered the
3 policies and liquidated the securities posted as collateral.

Plaintiffs' complaint includes tort and statutory claims for negligence, negligent misrepresentation, negligent hiring, training and supervision, consumer fraud, and insurance fraud. It also alleges claims for breach of an oral contract and the implied covenant of good faith and fair dealing. Defendants now move for summary judgment or partial summary judgment on all of the claims.

**II.**

Defendants challenge plaintiffs' claims on six grounds. They contend that the heightened standard for negligent misrepresentation precludes the general negligence claim and the economic loss rule bars the non-statutory tort claims. They also maintain that plaintiffs can show neither statements about present facts to support claims for negligent misrepresentation, insurance fraud, or consumer fraud, nor justifiable reliance to support claims for negligent misrepresentation or insurance fraud. Moreover, they contend that plaintiffs' allegations do not state a claim for insurance fraud. Finally, defendants assert that the parol evidence rule bars both of plaintiffs' contract claims.

A claim for negligence against a provider of professional information concerning representations or omissions must satisfy requirements beyond a general claim for negligence. Kuehn v. Stanley, 208 Ariz. 124, 128, 91 P.3d 346, 350 (Ct. App. 2004). Thus, one cannot bring a separate claim for negligence where negligent misrepresentation is the proper claim. Id. Plaintiffs concede that their negligence claim is no longer appropriate. Therefore, we grant defendants' motions for summary judgment on plaintiffs' negligence claim.

Defendants contend that the economic loss rule bars plaintiffs' claims for negligent misrepresentation and negligent hiring, training, and supervision because plaintiffs also seek to recover the same economic damages under a purported oral contract. Under very limited circumstances, the economic loss rule precludes recovery in tort for purely economic losses

- 4 -

in order to maintain the distinction between tort and contract. While federal courts have applied the doctrine more broadly, Arizona state appellate courts have not extended it beyond the contexts of products liability and construction defects. Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc., 212 P.3d 125, 128 (Ariz. Ct. App. 2009); Evans v. Singer, 518 F. Supp. 2d 1134, 1142 (D. Ariz. 2007). The Arizona Court of Appeals recently explored the limits of the economic loss rule. The court distinguished architectural design from construction defects and held that the economic loss rule does not apply to professional negligence claims against architects because they arise from duties implied by law independently of any contract. Flagstaff Affordable Hous., 212 P.3d at 129. In deciding whether the economic loss rule applies, the court urged the use of the same three factors in both products liability and construction defects cases. Valley Forge Ins. Co. v. Sam's Plumbing, LLC, 220 Ariz. 512, 207 P.3d 765 (Ct. App. 2009); Hughes Custom Bldg., LLC v. Davey, 212 P.3d 865 (Ariz. Ct. App. 2009). This analysis was originally formulated by the Arizona Supreme Court in the context of products liability. Salt River Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp., 143 Ariz. 368, 376-79, 694 P.2d 198, 206-09 (1984), abrogated on other grounds by Phelps v. Firebird Raceway, Inc., 210 Ariz. 403, 111 P.3d 1003 (2005). The goal is to determine "whether the claim brought properly sounds in tort or in contract" using the prescribed factors: the nature of the defect causing the loss, the manner in which the loss occurred, and the type of loss. Hughes Custom Bldg., 212 P.3d at 870. The first factor turns on whether the defect is unreasonably dangerous, the second on whether the loss was accidental or gradual, and the third on whether the loss was economic or physical. Id. at 870-72.

Thus, the issue is whether plaintiffs' claims properly sound in tort or in contract based on a case-by-case analysis of factors relevant to defects but not insurance. Indeed, the recent affirmation of the three-factor analysis suggests that caution is warranted when considering the applicability of the economic loss rule in broader contexts. We are persuaded that the Arizona Supreme Court would not apply the economic loss rule in this action. Unlike many claims in tort, negligent misrepresentation is designed to allow recovery of purely economic

losses. The insurance field is a regulated industry traditionally subject to a backdrop of tort liability. And there is little indication that Shacknai and Mathieson allocated the risks involved with Mathieson's representations through contract such that the parties should be left to the benefits of their bargain. Accordingly, we conclude that the economic loss rule does not bar plaintiffs' claims because they properly sound in tort.

Next, defendants contend that plaintiffs' claims for negligent misrepresentation, consumer fraud, and insurance fraud fail as a matter of law because plaintiffs' allegations concern non-actionable statements about future events. Claims for negligent misrepresentation and fraud must be based on statements about present facts. McAlister v. Citibank, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (Ct. App. 1992). Plaintiffs concede that Mathieson's predictions about the interaction of interest rates concerned future events. Instead, they base their claims on Mathieson's risk representations in the February 5, 2004 disclosure letter, including an implication that additional financial outlay was not a risk associated with inverted interest rates. A reasonable trier of fact could find that Mathieson misrepresented or omitted then-present facts concerning the risks involved with premium financing. Therefore, we deny defendants' motions for summary judgment to the extent of this contention.

Defendants also maintain that plaintiffs' negligent misrepresentation and insurance fraud claims fail because plaintiffs cannot show justifiable reliance. Whether one can rely on representations justifiably depends on one's own information and intelligence. St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co., 154 Ariz. 307, 316, 742 P.2d 808, 817 (1987). Defendants contend that the illustrations and standardized disclosure statements that Shacknai considered, the contracts entered into at his direction, and his sophistication as a law school graduate and corporate executive preclude a finding of justifiable reliance on Mathieson's alleged oral statements or on the disclosure letter. Plaintiffs concede that Shacknai did not rely on Mathieson's oral representations and that some of the differences between Mathieson's statements and the documents put him on inquiry notice. However, they assert that a reasonable trier of fact could find that Shacknai justifiably relied on the

result of his further inquiry, the disclosure letter, which came at a critical juncture for the closing of the transaction and contained a material misrepresentation or omission. We agree. Thus, defendants' motions for summary judgment are denied insofar as they challenge plaintiffs' ability to show justifiable reliance.

Arizona's insurance fraud statute prohibits statements misrepresenting the benefits or advantages of insurance policies. A.R.S. § 20-443(A)(1). Defendants contend that plaintiffs' allegations do not state a claim for insurance fraud because they involve the financing of the policies and not the policies themselves. The policies involved in this action cannot be divorced so easily from their financing. The primary function of the smaller policy was to finance the interest payments on the loan during the early years of the premium financing arrangement. Any statements made concerning the benefits or advantages of premium financing were statements about the benefits or advantages of the subject policies. Therefore, we deny defendants' motions for summary judgment on plaintiffs' claim for insurance fraud.

Finally, defendants contend that plaintiffs' contract claims are barred by the parol evidence rule. Plaintiffs allege that they formed an oral agreement with the Merrill Lynch defendants, AIC, and Pacific Life under which plaintiffs would never have to pay out-of-pocket for loan interest or insurance premiums. They offer Mathieson's oral representations to Shacknai as evidence of this contract. Defendants assert that such a contract would directly contradict the obligations set out in the AIC promissory note and the Pacific Life policies. Such a contract would also directly contradict the disclosure letter which plaintiffs claim is consistent with Mathieson's oral representations. It states that additional financial outlay by Shacknai might be required were the insurer to perform poorly for an extended period.

The parties disagree on whether New York or Arizona law applies to the note and the policies to determine integration and the applicable parol evidence rule. However, they agree that New York law is less accommodating to the preliminary consideration of parol evidence to determine the parties' intent and the extent of integration. Assuming, without deciding, that plaintiffs are correct and Arizona law applies, we consider plaintiffs' evidence of the

- 7 -

parties' intent and find that it is inadmissible because it contradicts the integrated note and the integrated policies. See Taylor v. State Farm Mut. Auto Ins. Co., 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993). Because plaintiffs' evidence of an oral contract is inadmissible, their breach of contract and breach of the implied covenant of good faith and fair dealing claims fail. We grant defendants' motions for summary judgment on plaintiffs' contract claims.

**IT IS THEREFORE ORDERED GRANTING IN PART** and **DENYING IN PART** defendants' unsealed and sealed motions for summary judgment (docs. 149 & 168). They are granted on plaintiffs' claims for negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing. They are denied on plaintiffs' claims for negligent misrepresentation, negligent hiring, training, and supervision, consumer fraud, and insurance fraud.

DATED this 2nd day of December, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge